## ST. LOUIS & S. F. R. CO. v. MODEL LAUNDRY.

No. 2692.   Opinion Filed June 20, 1913.

On Rehearing, July 15, 1914.

(141 Pac. 970.)

1.   RAILROADS — Crossing Accident—Contributory Negligence—Direction of Verdict. It is not error to overrule defendant's demurrer to evidence and motion to instruct verdict, where there is evidence reasonably tending to prove negligence on its part proximately causing injury to plaintiff's automobile at railroad crossing, notwithstanding and without regard to evidence of contributory negligence on part of plaintiff, in view of section 6, art. 23 (section 355, Williams' Ann. Ed.), Constitution.

2.   SAME—Negligence—Question for Jury—Sufficiency of Evidence. Where defendant was backing its mail car in conscious excess of speed limit of city ordinance, in making a street crossing, without flagman or lookout, other than a pilot, in door on inner side of curve in its track where such crossing is approached, who could not see object on opposite side of track nearer than within 35 or 40 feet of end of such car, where there is some negative evidence of failure of defendant to give requisite crossing signals and positive evidence that both whistle and bell signals were given, where evidence for plaintiff was that in approaching the crossing from such opposite side at a speed of four or five miles per hour the driver of its automobile, when within about twenty feet of crossing, looked, without obstruction to his view for a distance of certainly not less than 200 and probably 300 or 350 feet, in the direction from which said car approached the crossing, where neither the driver nor his companion in the automobile testified specifically whether he looked as far in that direction as the unobstructed condition of the track permitted, where, after looking in that direction and seeing no approaching train, the driver and his companion gave their attention to an engine apparently threatening to approach the crossing from the opposite direction, until, while commencing to go over defendant's track as slow as could be done in an oblique direction in deference to previously well-

known cavity between timbers on inner sides of rails and rough condition of crossing, the driver and his companion again looked in direction from which the car approached, and, discovering same at a distance of 50 or 80 feet away, attempted to get the automobile off the track onto the side from which it was approached, but, being delayed by one or both front wheels being caught in said cavity, failed to do so until mail car struck the rear end of automobile and demolished same, throwing debris onto said side of track, and where no attempt is made to slow down or stop train until automobile is knocked from track, and where driver of automobile would have had 34 seconds in which to have made crossing from where he first looked in direction from which mail car approached if same was then nearly 300 feet away and approached within said speed limit, and where he would have had only a little more than a fourth of such time if said car approached said crossing at the highest speed stated by any witness, it was for the jury to say, under proper instructions, whether defendant was guilty of negligence proximately causing the injury; and the court did not err in overruling demurrer to the evidence nor in refusing to peremptorily instruct verdict for defendant.

3. SAME—Crossing Accident—Discovered Peril. Where the evidence tended to show the facts stated in the second subdivision of the syllabus, and that the perilous situation of plaintiff's automobile was discovered by defendant in time for the latter to have avoided the collision therewith and the resultant injuries thereto, the court did not err in submitting to the jury the question of "discovered peril" as a ground upon which plaintiff might recover, notwithstanding they might find him guilty of contributory negligence.

4. SAME — Negligence — Crossing Accident — Submission of Issues—Evidence. Where a defendant willfully and wantonly is guilty of negligence, proximately causing an injury, a plaintiff's contributory negligence does not bar his right to recover; and, where the evidence tends to show the facts stated in the second subdivision of the syllabus, it was not reversible error for the court to submit to the jury under proper instructions the question as to whether plaintiff might recover upon this theory of the case.

5. SAME—Contributory Negligence. The degree of care required of a traveler in making a railway crossing is that degree which a prudent person, in the same situation and under the same conditions, would ordinarily exercise, and, although its constituent elements may vary with variations in such situations and conditions, the care required is the same degree in all cases; and the driver of an automobile is not required to exercise a higher degree of care than a prudent person on foot or in a different conveyance would ordinarily exercise, whatever may be the difference in character or extent of the precautionary measures required of him to constitute that degree.

Syllabus.

6. **TRIAL—Refusal of Instructions Covered.** It is not reversible error to refuse a requested instruction embodying a correct proposition of law that is fairly embraced in another instruction given by the court.

7. **NEW TRIAL—Grounds—Compromise Verdict.** Where the evidence tends to show the value of the property to have been from $1,000 to $1,200 before the injury, and practically nothing thereafter, but where such evidence is not such as to preclude any doubt as to such valuations, and where the verdict is for only $550, a defendant against whom such verdict is given is not entitled to a new trial upon the ground that such verdict was evidently the result of compromise.

8. **SAME—Verdict.** The principle requiring a verdict to be set aside which cannot be justified upon any hypothesis that is presented by the evidence in respect to the amount of same applies only to cases where the damages sought to be recovered are liquidated; and a verdict for unliquidated damages in an amount less than any evidence tends to show will not be set aside upon the ground that it was the result of compromise not otherwise shown.

ON REHEARING.

9. **EVIDENCE—Probative Effect—Inferences.** An inference from testimonial evidence is permissible to the jury when, and only when, it is a probable or natural hypothesis or explanation of such evidence, and when the other hypotheses or explanations are either less probable and natural or at least not exceedingly more probable or natural.

10. **EVIDENCE—Inferences—Foundation.** An inference from uncertain testimonial evidence is not ordinarily, if at all, permitted to be drawn by the jury; and an inference cannot ordinarily, if at all, be predicated upon a fact the existence of which rests upon a prior inference; but a legitimate inference must have as its base testimonial evidence that is certain, and should be based immediately thereon.

11. **RAILROADS—Crossing Accident—Discovered Peril—Submission of Issues—Evidence.** An inference of actual discovery of peril in time to have avoided, by the exercise of ordinary care, the collision of the railroad car and an automobile at a railroad crossing, predicated alone upon the facts stated in the body of this opinion, and contradicted by the otherwise unimpeached and positive testimony of the only person to and through whom it is sought to be imputed, is too improbable and wanting in reason to warrant the submission of the question of such discovery and of liability based thereon to the jury.

(Syllabus by Thacker, C.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by the Model Laundry, a corporation, against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded on rehearing.

R. A. *Kleinschmidt* and *Fred E. Suits* (*W. F. Evans,* on the brief), for plaintiff in error.

*Moss, Turner & McInnis,* for defendant in error.

Opinion by THACKER, C. Section 6, art. 23 (section 355, Williams' Ann. Ed.), Constitution of Oklahoma, reads:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall at all times, be left to the jury."

That these defenses are questions of fact for the jury, and that the verdict of the jury is conclusive as to the fact of their existence or nonexistence, see the following cases: *Chicago, R. I. & P. Ry. Co. v. Beatty,* 27 Okla. 844, 116 Pac. 171; *Independent Cotton Oil Co. v. Beacham,* 31 Okla. 384, 120 Pac. 969; *Phoenix Printing Co. v. Durham,* 32 Okla. 575, 122 Pac. 708, 38 L. R. A. (N. S.) 1191; *Chicago, R. I. & P. Ry. Co. v. Hill,* 36 Okla. 540, 129 Pac. 13, 43 L. R. A. (N. S.) 622; *Dewey Portland Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659.

In view of the foregoing statement of the law as to the issue of contributory negligence, we should eliminate this defense in discussing defendant's first specification of error, in that the court overruled its demurrer to plaintiff's evidence and its second specification, in that the court refused to direct a verdict; but in stating the facts we may, nevertheless, incidentally state some relating only to this defense.

Under the evidence, which is conflicting on many points, it may be assumed that the jury found that the evidence in favor of plaintiff tended to prove facts as follows: That Francis street runs north and south, and defendant's track and right of way in Oklahoma City approaches same on a gradually decreasing curve from the southwest, and crosses it with very slight curvature at an angle of perhaps not more than fifteen or twenty de-

grees north of a due east and west line; that the south line of First street, running east and west, intersects the north line of defendant's right of way about 47 feet from its track and at a point about 210 feet a little south of west from this crossing, and proceeds thence with the curvature of the right of way and track in a northeasterly direction to Francis street at a point about 47 feet north of the crossing. That there was a heavy timber on each side of each rail of defendant's track at this crossing, and that same were worn and, in at least one instance, cupped. That there was a cavity of considerable depth between the two inner timbers, so that crossing it in an automobile, such as the one in question here, was difficult, and required not only the utmost reduction of speed, but an oblique course. That in daylight, on April 18, 1910, A. R. Nadelhoffer, acting driver, in the employ of plaintiff, was in the latter's laundry delivery automobile, and, having come from the west along First street to Francis at said point about 47 feet north of this crossing, and having there turned south and proceeded to the crossing at a speed of about four or five miles per hour, properly undertook to make the crossing by going over it in an easterly and oblique direction as slow as could well be done. That the automobile had a closed top with opening only in front, but with a small, round, and transparent glass on either side through which one might look out. That after turning south on Francis street, and when within about twenty feet of the crossing, Nadelhoffer looked to the west along plaintiff's track for a distance of 60, 80, 200 or more feet, the same being as far as would usually be necessary to insure safety, and, seeing that same was clear, thereupon gave his attention to a switch engine, variously estimated at from 50 to 200 feet to the east, but probably about 140 or 150 feet from the crossing, which was "blowing" to keep the fire livened up in readiness to start toward the crossing, and appeared to threaten danger from that direction, until he reached the crossing. That Nadelhoffer was well acquainted with the rough condition of the crossing, and properly went onto it as slowly as he could and at a considerable angle from

a straight line, across the track, toward the east. That about when the right front wheel was in the cavity and the left front wheel was just over the first rail, or just before that time, and too late to prevent this situation of the automobile, he discovered the approach of the end of defendant's mail car not more than about 50 or 80 feet away to the southwest, and exclaimed, "Good God, there is a train coming right behind us," properly attempted to get off the track by turning the front wheels to the left, the same being the side from which he had approached, which exposed the rear end of the automobile to the approaching mail car, and before he was able to clear the track on account of the wheel being in the cavity the end of the mail car struck the rear end of the automobile, completely demolishing it, and depositing the debris about the Francis street east, sidewalk to the north of defendant's track, Nadelhoffer and the other occupant of the car being caught under the wreckage, and Nadelhoffer being hurt to such an extent that he was taken to a hospital and did not see the wreckage until some hours later in the day. That the mail car was being pushed by a backing engine about 120 feet from the end that struck the automobile. That the engineer saw the automobile ahead of him on First street as it approached and turned south on Francis street, and observed that the occupants of the automobile had not looked out up to the time they disappeared from his view, which was when they turned south on Francis street and some 30 or 40 feet before they reached the crossing, and gave no whistling signal after the turn. That there were stirrups at the ends and two doors in each side of the mail car, and defendant's passenger pilot was standing in and looking out of the east door on the south side of the car about five or six feet back from the end of the car, and was leaning out far enough that he could see an object on the opposite or north side of the track 35 or 40 feet ahead of the car. That the defendant had the services of no flagman nor other lookout. That the passenger pilot saw the automobile, when and how it went upon the track apparently without knowledge of the approach of the mail car, and in time to have realized the peril of the automobile and have given a stop signal, which should have resulted in the stop-

ping of the train in time to have avoided collision or, at least, in time to have avoided striking the automobile with the force and consequent great damage it did. That the engineer made no effort to stop the train until after the automobile had been struck and knocked off of the track far enough for him to see it notwithstanding curvature in track. That at the time of the accident there was in force a valid ordinance of Oklahoma City reading as follows:

"That no steam railway engine shall be run within the corporate limits of Oklahoma City, Oklahoma Territory, at a greater speed than six miles an hour. Any person violating this section shall, upon conviction thereof, be fined in any sum not less than ten nor more than one hundred' dollars."

That defendant's train approached the Francis street crossing and struck the automobile at a speed of at least six or seven miles per hour, as testified to by defendant's engineer and fireman, probably at a speed of seven, eight, or nine miles, as testified by defendant's switchman, and possibly at a speed of twenty miles per hour, as testified by Nadelhoffer for plaintiff. That the automobile was demolished, and plaintiff thereby damaged in the sum of $550. That at the time of the accident Francis was a public and much-traveled street where crossed by defendant's track. That at the time and place Nadelhoffer looked west and saw the track clear as far as he did in that direction a prudent person in his situation and with his knowledge of the crossing and the speed limit upon and usual running of trains in Oklahoma City would have assumed that the crossing could be made at the speed the automobile was driven and was attempting to make it before any train from that direction would reach the same, so that there would be no necessity for further observation until he did, in fact, look and discover the car about 50 or 80 feet away; and that defendant was guilty of negligence proximately causing the injury in the excessive speed at which the mail car approached the crossing, in the want of proper lookout otherwise or from a better position on or near the end of the mail car that struck the automobile, and in the defective condition of the crossing, if not in any other respect.

If the train had approached the crossing at a speed of six miles per hour, Nadelhoffer would have had 34 seconds when it was nearly 300 feet away, 22 seconds when it was nearly 200 feet away, nine seconds when it was nearly 80 feet away, six seconds when it was nearly 60 feet away, and five seconds when it was nearly 50 feet away, in which to make the crossing from wherever he may have been at such time; but a speed of nine miles per hour would have reduced these seconds by a third, a speed of twelve miles per hour would have reduced them by a half, and a speed of twenty miles per hour would have reduced them nearly three-fourths of the time.

In 29 Cyc. 436, 437, it is said:

"In many decisions it is held that a violation of a statute or ordinance specifically imposed under the police power of the state is negligence *per se,* or as a matter of law, if the other elements of actionable negligence exist. * * * In some cases, however, it is held that while the violation of a statute or ordinance is not negligence *per se,* it is competent evidence, and sufficient to justify the jury in finding as a fact that its violation was negligence."

Among the comparatively late cases holding that it is negligence *per se* are the following: *M., K. & T. Ry. Co. of Texas v. Matherly,* 35 Tex. Civ. App. 604, 81 S. W. 589; *Masterson et ux. v. St. Louis Transit Co.,* 204 Mo. 507, 103 S. W. 48; *St. Louis & S. F. R. Co. v. Summers,* 51 Tex. Civ. App. 133, 111 S. W. 211; *Garber v. St. Louis & S. Ry. Co. of Texas* (Tex. Civ. App.) 118 S. W. 857; *St. Louis & S. F. Ry. of Texas v. Cambron* (Tex. Civ. App.) 131 S. W. 1130; *Illinois Central R. Co. v. Sumrall,* 96 Miss. 860, 51 South. 545; *Short v. Philadelphia, B. & W. R. Co.,* 7 Pennewill (Del.) 108, 76 Atl. 363; *Dyson v. Southern Ry. Co.,* 83 S. C. 354, 65 S. E. 344; *Wabash R. Co. v. McNown* (Ind. App.) 99 N. E. 126; *Nichols v. Chicago, B. & Q. R. Co. et al.,* 44 Colo. 501, 98 Pac. 808.

It is unnecessary, however, to determine in this case whether a speed above the six miles per hour limit is negligence *per se* or merely evidence from which the jury could infer and find negligence. The jury were clearly warranted in finding from the

evidence that the excessive speed was negligence and the proximate cause of the collision with, and injury to, the automobile.

The law makes it the duty of, and reposes confidence in, the jury to correctly decide all questions of fact; and where there is any evidence, including every valid inference that may be drawn from the same, reasonably tending to prove facts essential to sustain a verdict, it is not error for the court to refuse to sustain a demurrer to such evidence nor to refuse to direct a verdict.

The jurors were in better position than this court is to determine such questions of fact; and, as against these specifications of error, we feel bound to sustain the judgment.

Under its third specification of error defendant insists that the following instruction given by the court is not a correct statement of the law:

"Contributory negligence is negligence on the part of the plaintiff contributing as a proximate cause to his injury or damage. In this connection you are charged that the plaintiff in this action is chargeable with all of the acts or omissions, if any, of which the plaintiff's employees were guilty in handling the automobile in question. The defendant has plead as a defense to this action that the plaintiff was guilty of contributory negligence, in that its employees operating said automobile failed to make *any effort* to ascertain whether or not a train was about to approach said crossing and drove said automobile upon said tracks without looking for a train. Now, if you believe from the evidence that the agents, servants, and employees of the plaintiff, operating said automobile, drove the same upon the tracks of the defendant without making *any effort* to ascertain whether or not a train was about to pass over the same, and if you further believe that such failure, if any, was the proximate cause of the damage, if any, done to plaintiff's property, then, and in that event, you will find for the defendant, unless you find that the defendant was guilty of willful, wanton, and gross negligence, as hereinafter defined to you."

This instruction appears to justify the implication that *any effort,* however far short it might have been of the care a prudent person would exercise, would be sufficient to exonerate plaintiff from the charge of contributory negligence, and is therefore subject to criticism; but the defect lies only in an infer-

ence deducible from the lack of fullness or comprehensiveness or predicated upon the assumption that the expression of the lesser excludes the greater effort required, and not in what is expressly stated; and, in other instructions given the jury, the court makes it perfectly clear that it was the duty of Nadelhoffer, as plaintiff's driver, to exercise such reasonable care and prudence as a prudent person under the same circumstances would usually observe in looking out for an approaching train and avoiding collision therewith, and that a failure on Nadelhoffer's part to exercise such care would defeat plaintiff's right of recovery.

Among other instructions relating to the defense of contributory negligence, the court said:

"You are instructed that at a point where a railroad crosses a street or highway a railroad company and a traveler upon such street or highway are each required to exercise the same degree of care; the railroad to avoid striking the traveler; and the traveler to avoid placing himself in a position where he may be struck by a train. The law provides that the care required of each must be commensurate with the danger or risk involved in using the particular crossing. As between the traveler on the street or highway and the train on the railway, the train has the right of way over a crossing as against the traveler. * * * It is therefore the duty of the traveler approaching a crossing to stop, if a train is approaching the crossing in plain view and near the crossing, until the train has passed, unless it reasonably appears that he can with safety cross the railroad before the train reaches the crossing. * * * With reference to whether the plaintiff, through its agent and driver, A. R. Nadelhoffer, was guilty of contributory negligence, you must bear in mind that the law required of it the same degree of care and prudence for the safety of its property that it required the railroad company to exercise to avoid the accident. No matter how negligent the railroad company may have been in running the train in question, if the plaintiff's agent and driver, A. R. Nadelhoffer, failed to look for the approaching train at a point where, if he had looked, he could have seen it in time to have avoided the accident, or if he looked, and failed to see it when he ought to have seen it, by proper vigilance, and if you find from the evidence that such omission was negligent, then you may find that it brought the accident upon itself, and is not entitled to recover. You are further instructed that every person of ordinary intelligence is bound to know that a crossing of a railroad

track over a public highway, where trains are frequently passing, is · a place of more than ordinary danger, and it becomes his legal duty to use correspondingly care and caution to avoid accidents, and, while it is true that the public have a ·right to be upon a public highway for the purpose of crossing over such tracks, it is the duty of all persons crossing such tracks to do so with reasonable despatch. You are further instructed that, if you find from the evidence that the plaintiff's driver, A. R. Nadelhoffer, was familiar with this crossing and its danger, that he frequently used it, and knew how to act in using it to protect himself, and that under the special circumstances you find that he failed to act as a prudent and cautious · man should have acted from beginning to end, or that he omitted some precaution that a prudent man ought to have taken, as a result of which the accident happened, and without which the accident would not have happened, then plaintiff cannot recover.   *   *   * You are further instructed that, if you find from the evidence that the negligence of the employees of the defendant, if negligence has been shown on defendant's part, and that of the plaintiff, if negligence has been shown on plaintiff's part, were concurrent and continued down to the very moment the accident happened, then and in that event the defendant would not be liable, and plaintiff cannot recover herein."

The instruction first above quoted and of which defendant complains was given at plaintiff's request; but all the other instructions above quoted were given at the request of the defendant, with modifications, however, in some instances not material to the point under discussion.

That the instructions must be considered as a whole, see the following cases: *Nutt v. State,* 8 Okla. Cr. 266, 128 Pac. 165; *M., K. & T. Ry. Co. v. Whorton,* 28 Okla. 815, 119 Pac. 233; *Great Western Mfg. Co. v. Davidson Mill & Elevator Co.,* 26 Okla. 626, 110 Pac. 1096; *C., R. I. & P. Ry Co. v. Johnson,* 25 Okla. 760, 107 Pac. 662, 27 L. R. A. (N. S.) 879.

There appears to be no reversible error in the instructions given, taken as a whole, on the defense of contributory negligence.

The defendant further complains of the refusal of the court to give the jury the following instructions:

VII.  "It is for the jury, therefore, to determine from the evidence in this case:

"(1)   Whether or not the defendant railroad company was negligent in the handling of its train at the crossing at the time the accident occurred.

"(2)   Whether or not, even though you should find the defendant guilty of negligence, the plaintiff's agent and driver, A. R. Nadelhoffer, was also guilty in not taking the precaution for the protection of plaintiff's property which the law required of him at the particular time and place, in view of all the circumstances of the situation, even though you should find that the defendant railroad company or its servants in charge of the train in question failed to perform any of the duties which the law imposes with reference to persons who, or property which, might be on the crossing and are thereby guilty of negligence, still, if you find from the evidence that the plaintiff's agent and driver, A. R. Nadelhoffer, failed to use that degree of precaution to discover approaching trains which the law required of him, under all the circumstances, then the plaintiff cannot recover in this case, notwithstanding the negligence of the railroad company, for the contributory negligence of the plaintiff's agent and driver in charge of said automobile delivery wagon will defeat plaintiff's claim."

XI.   "You are further instructed that, even though you may believe from the evidence that no signals were given as the train approached the crossing, that the railroad company was negligent in the operating of such train, still these facts and conditions would not excuse negligence on the part of the plaintiff. The trains of a railroad have a superior right on its track, and it is the duty of travelers on a railroad crossing to stop, look, and listen attentively before driving upon the tracks, particularly when there are obstructions which will prevent the traveler from readily discovering an approaching train, or if there are circumstances that prevent their clearly and distinctly hearing its approach. Such obstructions or such circumstances preventing the discovery of the approach of a train or hearing the noise it makes are such as to put the traveler upon his guard, and to require of him the exercise of more precaution than he would ordinarily exercise if the track was not obstructed, or the other circumstances were not present which would have interfered with his hearing."

XIV.   "You are instructed that a railroad is of itself a warning of danger, and one who attempts to cross it must exercise ordinary care in doing so—that is, he must exercise that degree of care which an ordinarily prudent man would

exercise under like circumstances—but it must be such care as is commensurate with the known danger; thus, if one attempts to cross a track with an automobile which at the time is making more or less noises, caused by the machinery being in motion, he would be required to exercise a greater degree of care than he would if he were crossing on foot, or in a conveyance that was making little, if any, noise."

XV. "You are further instructed that, if a railroad track is a warning of danger, then it is the duty of a traveler upon a public highway to stop, look, and listen for an approaching train before attempting to cross it, and he must keep his faculties in active exercise, and not permit his attention to be diverted from the danger before him."

XVIII. "You are further instructed that, if the evidence shows that the crossing in question was in bad condition, this is only a greater reason why the driver in charge of the automobile should have exercised a higher degree of care in making the crossing than if the crossing had been in good condition, and if the evidence further shows that the driver of the machine was familiar with the condition of the crossing, then he owed his master a higher duty for the protection of its property, and it was incumbent upon him to exhaust every means he had of knowing whether a train was approaching the crossing."

XIX. "You are further instructed that the driver of an automobile, before attempting to cross the track of a railroad company in its yards, is chargeable with a much higher degree of care than when making a crossing in the country, and you are further instructed that it was the driver's duty in charge of plaintiff's automobile, before attempting to make the Francis street crossing, to stop, look, and listen, and, unless you find that he used these necessary precautions, it is such negligence as would bar a recovery."

XIII. "You are further instructed that, if you find from the evidence that plaintiff's driver, A. R. Nadelhoffer, was familiar with this crossing and its danger, that he frequently used it, and knew how to use it, and knew how to act in using it to protect himself, and that under the special circumstances you find that he failed to act as a prudent and cautious man should have acted from beginning to end, or that he omitted some precaution that a prudent man ought to have taken, as a result of which the accident happened, then plaintiff cannot recover. He should have used all his faculties for seeing and hearing; he should have approached cautiously and carefully; and he should have stopped, looked, and listened before driving the automobile

upon the track, and should have done everything that a reasonably prudent man would have done before he attempted to make the crossing. Scrutinize his acts and doings under the light of the then situation, the nature and character of the crossing, the time of day, the fact that there were other railroad tracks near, that a switch engine was standing just east of the crossing on the passing track, the noise incident to the running of said automobile, and every circumstance appearing at the time to have influenced his conduct then and there under those circumstances, and no others, and say upon your fair and impartial judgment whether the plaintiff's driver acted as a reasonably prudent man should have acted, and with due care and caution demanded by the exigencies of the occasion. If he did so act, and the railroad company was negligent, then the plaintiff is entitled to your verdict. If he did not so act, the railroad company is entitled to your verdict, whether it was negligent or not."

The instructions refused, in so far as they relate to the defense of contributory negligence and are correct statements of the law as a whole applicable to the facts, are fairly covered by the instructions given by the court.

It appears that defendant's track to the southwest of the crossing was free from obstruction and open to view for a distance of perhaps about 350 feet, where plaintiff's automobile turned south on Francis street, with a gradually decreasing distance to not less than about 200 feet at the crossing. The only evidence as to the noise the automobile was making is shown by the following extract from the record:

"Q. Did that machine make very much noise in running? A. Not so overly. Q. It did make some noise? A. Not so much; it was practically a new machine."

It does not appear whether the automobile was propelled by steam, gasoline, or electric power.

We cannot say, as a matter of law, under the facts in this case, that it was the duty of Nadelhoffer to have brought the machine to a full stop for the purpose of looking and listening for an approaching train; and we are therefore of the opinion that the court did not err in refusing the requested instructions embodying that proposition.

In 33 Cyc. 1010, 1011, it is said:

"Although some cases seem to hold that it is the duty of the traveler to stop, as well as to look and listen, in all cases before going on a crossing, by the weight of authority it is not necessarily negligence on the part of one about to cross a railroad track to fail to stop in addition to looking and listening for trains, unless under the existing circumstances he cannot look and listen without stopping; but whether such traveler must stop in addition to listening and looking depends upon the facts and circumstances of each particular case, and so is usually a question for the jury."

The fourteenth requested instruction refused by the court embodies an illustration which is possibly not justified by the evidence as to the noise the automobile was making, if it is literally correct, when viewed from the standpoint of the law, in requiring Nadelhoffer "to exercise a *greater degree* of care than he would if he were crossing on foot or in a conveyance that was making little, if any, noise."

In *Gulf, C. & S. F. Ry. Co. v. Smith et al.,* 87 Tex. 348, 28 S. W. 520, care is said to be divided into three degrees: (1) "Slight care;" (2) "ordinary care;" (3) "great care."

It may be, for reasons urged by defendant, that the driver of an automobile should be held bound to take more and different precautionary measures against collision than either a footman or a driver of some other conveyances; but, if so, it would seem that such additional and different precautionary measures are required to constitute the same degree of care that the footman or driver of such other conveyance may exercise by fewer or different precautionary measures.

A "higher degree of care" would appear to require "great care" and a higher degree than a prudent person, under the circumstances, would usually exercise.

We are aware that "degree of care" is an expression sometimes used by the courts to distinguish between the different extents or characters of the precautionary measures required in different cases to constitute what would be the same degree under the three-degree division of care into "slight care," "ordinary care," or "great care;" but it seems better and less pro-

ductive of confusion to regard "slight," "ordinary," or "great" care as the degrees known to the law, and to refer to difference in extent or character of precautionary measures required under different states of facts to constitute a degree by some other and more specific or, at least, more appropriate designation than as a higher or lower degree of care.

However, assuming this refused instruction to be unobjectionable in the respects suggested, and that it could only have been correctly understood by the jury, does it embody any proposition of law that is not fairly embraced in the instruction actually given the jury? We think not. The instructions actually given appear to fairly present the law of contributory negligence applicable under the pleadings and evidence in the case.

- In *C., R. I. & P. Ry. Co. v. Watson,* 36 Okla. 1, 127 Pac. 693, it is held:

"Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such person would not have done."

In *Ladow v. Oklahoma Gas & Electric Co.,* 28 Okla. 15, 119 Pac. 250, citing authorities, it is held:

"Contributory negligence is nothing more nor less than negligence on the part of the person injured and the rules of law applicable to the negligence of a defendant are applicable thereto."

Comp. Laws 1909, sec. 2830 (section 2586, Stat. 1890, and Rev. Laws 1910, sec. 2820, reads:

"The terms 'neglect,' 'negligence,' 'negligent,' and 'negligently,' when so employed, import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

In 29 Cyc. 505, it is said:

"Contributory negligence in its legal significance is such an act or omission on the part of plaintiff, amounting to an ordinary want of care, as, concurring or co-operating with the negligent act of defendant, is the proximate cause or occasion of the injury complained of."

The defendant further complains of the following instruction given by the court:

"If you believe from the evidence that plaintiff's automobile came upon the said Francis street crossing and became

caught in a depression in said crossing, and if you further believe from the evidence that the defendant's agents, servants, and employees in charge of said train saw the dangerous position in which plaintiff was placed in time to have prevented the accident, by the use of ordinary care in exercising all of the faculties at their command to stop said train, and if you further believe from the evidence that said employees in charge of said train could have stopped said train and prevented said accident, by the use of ordinary care in using the facilities in their hands, after they saw the dangerous position of plaintiff's automobile, and if you further believe from the evidence that they failed to use ordinary care to stop said train after they saw the dangerous position of said automobile, and if you further find from the evidence that such failure, if any, was the proximate cause of the damage done plaintiff's property, if any, then you will find for the plaintiff, even though the plaintiff may have been guilty of contributory negligence in placing itself in said dangerous position and in approaching said crossing."

In support of this specification of error it is argued that there is no evidence justifying the instruction; but, although the inference of actual discovery of the perilous situation of the automobile in time to have prevented the injury, or before it was actually struck, appears somewhat improbable, we are unable to say, as a matter of law, that such inference is untrue, or that no evidence reasonably tends to support it, or that the giving of this instruction was error.

In *Railway v. Gullatt,* 158 Ala. 502, 505, 48 South. 473, 474, the Supreme Court said:

"The particular averment is 'that the agents and servants of the defendant then and there in the control and management of said train saw the peril of the plaintiff's intestate, and after the discovery of said peril' the train was negligently run upon intestate, killing him. The predicate to the duty alleged in the count to have been breached, to the proximately consequent injury of intestate, is knowledge of the peril of intestate by those in control of the defendant's train. Of course, to make out the case under the count, the averred fact of knowledge of the peril stated was absolutely essential. It is insisted that, on the trial after reversal, this testimony so far sustained the important averment and condition to the duty declared as to carry the *prima facie* case and to require the submission of the question to the determination of the jury; namely, that one Kenne-

mar was sitting in a room of his house, near the railway; that he heard three or four short, shrill whistles, one right after the other; that he had lived near a railroad all his life, and knew the blasts that are made for cattle and things on the track; that he had often observed that kind of blowing for things on the track; that he at once ran from the room and across the porch, a distance of about eighteen feet, to the edge of the porch, looked in the direction from which the train was coming, saw it emerge from a skirt of woods about 89 yards from where blood from the intestate appeared on the track, and then looked along the track in front of the train, but could not see anything; and that, had a man been standing upon the track, he could have seen him. We have considered with great care the question indicated, and are not prepared to say that the trial court erred in the submission of the matter to the jury. The inference that the engineer saw intestate on the track, before an on-coming train, running 25 or 30 miles an hour, may be reasonably deduced from the fact, testified to by Kennemar, that the signal heard by him he had often heard used for cattle and things on the track, and from the further uncontroverted fact that intestate was on the track when the train struck and killed him. Whether this inference should be drawn is, of course, another question, which must be left to the sound discretion of the jury. It is unquestionably an argument against the adoption of such an inference, under the circumstances, that the blows of the whistle may have been given for a different purpose or suggested by a different object on the track. But this is an argument only in opposition to the adoption of the inference reasonably deducible from the facts testified to. Likewise it is an argument only that, though the blows were sounded with reference to intestate, and his proximity to, or attitude about, the track ahead of the train, the peril of intestate may not have then existed and have been known to the enginemen; because, if the jury credited the testimony of Kennemar, the whistles blown were, as he often heard, used when cattle and things were on the track, and if so, intestate was on the track in a down posture, before an on-coming train, and, if so, he was in a position of extreme peril, unless the train was stopped. We have said enough to indicate the ground for our conclusion that the general affirmative charge for the defendant was properly refused on this phase of the case."

Again, the Supreme Court of Alabama, in the case of *Railway v. Forrister*, 158 Ala. 477, 48 South. 69, lays down this same rule, saying:

"The evidence tended to show that the track where the accident occurred was straight for a distance of about two miles in·the direction from which the train was approaching, and it was in the daytime, with nothing to obstruct the view, and that the engineer was looking ahead. On this state of the evidence it has been repeatedly held by this court that it becomes a question for the jury whether the engineer did or did not see the obstruction on the track, notwithstanding he may testify that he did not see it. If he did see the obstruction, in this case the child, if in fact it was on the track, and that is also a question for the jury, and willfully failed, or with reckless indifference of consequences omitted, to use preventive means or effort to avoid the injury, after discovery of peril, if discovered in time for preventive effort, he would be guilty of wanton wrong. These were all questions for the jury under the evidence."

The Supreme Court of Texas, in the case of *Brown v. Griffin,* 71 Tex. 654,·9 S. W. 546, lays down the same rule:

"It is. complained that the court erred in charging, in effect, that the plaintiff could recover, although he put himself in a position of danger, if the person in charge of the engine saw him in time to warn him of danger by giving the signal, and he failed to do it. It is claimed that there was no evidence to warrant this charge. Upon the theory that the jury were bound to believe the fireman who swore he did not see plaintiff, this may be true. But the proof is that he was upon the engine, operating it,. and that there was nothing in front of it to obstruct his view of the track. The jury might have presumed from this that he did see the plaintiff. Is the court bound to assume that the presumption is wholly destroyed, because a witness swore to the contrary? It may be that the weight of the evidence is clearly against the theory that the fireman saw the plaintiff, yet we cannot say that the proposition presented was so manifestly without evidence that it was calculated to mislead the jury."

See, also, *Railway v. Brock,* 35 Tex. Civ. App. 155, 80 S. W. 422.

The defendant further complains of the following instructions given by the court:

"If you believe from the evidence that the agents, servants, and employees of the defendant were operating said train at a high and excessive rate of speed without keeping any lookout and without giving any warning signals of its approach, and with utter, willful and wanton disregard of the rights of persons who

might lawfully be using Francis street, and with utter, willful, and wanton disregard for the safety of the life, limbs, or property of persons who might be lawfully using said crossing, and if you further believe that such acts, if any, were the proximate cause of the damage to plaintiff's property, then, and in that event, you will find for the plaintiff, even though you find the plaintiff guilty of contributory negligence."

The giving of this instruction presents a very serious question of error; but, on a consideration of all the evidence, we hold that there was enough upon this phase of the case to justify the instruction.

The evidence shows excessive speed, and tends to show want of adequate lookout, want of proper signals, at least want of any signal after the engineer saw the automobile turn south on Francis street noticeably without evidence of occupants having discovered the approach of the train, and discovery of perilous situation of the automobile about 50 or 80 feet on track ahead, in approaching and making a much used crossing; and, under all the circumstances, we cannot say there was error in submitting the instruction of willful and wanton disregard of the rights of persons who might lawfully be using the crossing to the jury.

In 3 Elliott on Railroads, 1257a, it is said:

"Although there is a clear distinction between negligence and willfulness, yet a reckless and wanton disregard of consequences, evincing a willingness to inflict injury, may amount to willfulness, although there is no direct proof of actual intention to inflict the injury complained of."

In *Railway v. Baker*, 79 Kan. 183, 98 Pac. 804, 21 L. R. A. (N. S.) 427, it is held:

"In an action to recover damages on account of an injury to a pedestrian resulting from a locomotive being driven along the public street of a city at an unlawful and dangerous rate of speed, with no signal being given of its approach, and with no outlook being kept, the misconduct of those in charge of it may amount to such recklessness and wantonness as to cut off the defense of contributory negligence, although such employees did not know of the presence of the person injured, if to their knowledge the extent to which the street was used made an injury so probable that they must be deemed to have realized its immi-

nence, and to have refrained from taking steps to prevent it because they were indifferent whether it occurred or not."

In *Railway v. Martin,* 117 Ala. 383, 23 South. 233, it was said:

"Assuming that the train was running at the speed of 30 miles an hour, over a public crossing of the track in a town of 500 inhabitants, and that there was an average crossing by the people of one person every ten minutes, or in great numbers, facts known to the servants in charge of the train, does the law declare that these facts do not constitute wanton negligence, or is the question as to whether these facts constitute wanton negligence one of law and fact, properly referable to a jury for its determination? The decisions of this state bearing upon the question were collected and reviewed in the case of *Railroad Co. v. Webb,* 97 Ala. 308, 12 South. 374, and in conclusion we used the following language: 'As we have said in *Arnold's Case* [84 Ala. 159], 4 South. 359: "Precautionary requirements increase in the ratio that danger becomes more threatening." And in *Sampson's Case* [91 Ala. 560], 8 South. 778, and *Meador's Case* [95 Ala. 137], 10 South. 141: "The duty of care and vigilance becomes proportionately increased according to the less or greater likelihood that there are persons on the track at the time and place." And in *Lee's Case* [92 Ala. 262], 9 South. 230: "Reckless indifference will be imputed to those who run a train at a high rate of speed, without signals of approach, when trainmen have reason to believe there are persons in exposed positions, as over unguarded crossings in a populous district of a city, or where the public are wont to pass with such frequency and in such numbers, facts known to those in charge of the train," etc. The public is entitled to the right of way over public crossings, as much so as the railroad itself. Persons in the proper exercise of this right are in no sense trespassers; and while it is incumbent on them to exercise due care, by looking and listening for approaching trains, it is equally the duty of those operating trains over such places to exercise due care to prevent injury. If, in utter disregard of this duty, and of the many restrictions imposed by the statute and city ordinances enacted to protect life and property at such places, those in charge should rush an engine voluntarily and unnecessarily over a public crossing, when it is likely that persons are exercising their right to cross the track as a public highway (a condition of fact which, on account of its location in a populous city, and the extent of its use as such, would authorize a jury to infer was known to defendant), with such reckless speed that due care

in keeping a proper lookout for persons who might be upon the track could not be had by those operating the train, or if they could not possibly stop or slacken its speed in time to avoid inflicting injury to persons discovered upon the track, and such injury did result from such negligence, can it be said, as a conclusion of law, upon any safe rule, that such reckless conduct and disregard of consequences is not the equivalent of willfulness or wantonness? *Shumacher v. Railroad Co.* (C. C.) 39 Fed. 174. We are of the opinion that a train may be run under some circumstances over a public crossing in a populous city at such speed as to amount to that recklessness which is the equivalent of wantonness and willfulness. The court cannot, as a matter of law, from the very character of the question, pronounce precisely·and infallibly the precise rate of speed at which a train may be run over such a crossing under the circumstances here testified to, without being guilty of culpable negligence.' * * * And, though the evidence in the present case is not altogether the same, the facts are such as to bring the case within the influence of the principles therein declared and the authorities cited. Whether or not, therefore, the defendant was guilty of wanton injury under the facts of the case should have been referred to the jury for its determination. It is earnestly contended by appellant that such a rule will greatly impede commercial transactions, and directly impair the efficiency of transportation by railroads. The public and railroads have their respective rights, and are under mutual obligations at public crossings and in the use of them. The doctrine of *'Sic utere tuo ut alienum non laedas'* applies alike to persons and corporations. The value of human life cannot be overbalanced by any pecuniary or public interest. Our duty is simply to declare the law."

In *Rowe v. Southern Ry. Co.,* 85 S. C. 23, 66 S. E. 1056, it is said:

"The defendant denied the allegations of the complaint, and set up the defenses of contributory negligence and assumption of risk. The jury rendered a verdict in favor of the defendant, and the plaintiff appealed upon exceptions, the first of which is as follows: 'That his honor erred in refusing to charge plaintiff's fourth request, to wit: "I charge you, further, that if you find that the defendant injured the property of the plaintiff as alleged, and that such injuries were done maliciously or wantonly, then contributory negligence on the part of the driver in charge of said property would not defeat the action, but plaintiff would be entitled to recover notwithstanding such contributory negligence"—the error being that the request stated the de-

clared law of this state, and was applicable to the testimony in the case.' It is unnecessary to cite authorities to sustain the proposition that the defense of contributory negligence is inapplicable when the action is based on a malicious or wanton act on the part of the defendant. The refusal to charge the request was therefore reversible error, unless it was rendered harmless by reason of the fact that there was no testimony tending to show malice or wantonness. There was testimony tending to show that no signals were given by the defendant, and this was a circumstance to be considered by the jury in determining whether the plaintiff was entitled to punitive damages. *Mack v. Railway,* 52 S. C. 325, 29 S. E. 905, 40 L. R. A. 679, 68 Am. St. Rep. 913; *Mason v. Railway,* 58 S. C. 70, 36 S. E. 440, 53 L. R. A. 913, 79 Am. St. Rep. 826; *Goodwin v. Railway,* 82 S. C. 321, 64 S. E. 242. There was testimony also tending to show that, although the ordinance prohibited a rate of speed greater than ten miles an hour, the train was running between 30 and 40 miles an hour at the time of the collision. This was evidence of negligence *per se. Dyson v. Railway,* 83 S. C. 354, 65 S. E. 344. The appellant's attorneys, however, contend that the uncontradicted testimony shows that it was necessary for the defendant to run its train at a greater rate of speed than ten miles an hour, in order to overcome the grade of the track, when approaching the crossing where the collision occurred. No such defense was set up in the answer of the defendant."

In *Shumacher v. St. Louis & S. F. R. Co., supra,* it was held:

"An act characterized by a high degree of negligence, or, as it is familiarly called, 'gross negligence,' is the counterpart of willful act. When the danger is very great, and the care to prevent disaster is very slight, or none at all, the neglect of a party becomes a willful act in law."

It is urged by defendant that the evidence showed that plaintiff was entitled to $1,100, if any amount whatever, and that the verdict for $550 instead was evidently a compromise verdict, which cannot be upheld.

A witness of somewhat uncertain qualifications to testify in this regard placed the value of the car at $1,200, another, engaged in selling automobiles and real estate and who sold this automobile to plaintiff, placed it at $1,050 or $1,100, "to plaintiff or one engaged in the same kind of business," and another, engaged in the automobile business, expressed the opinion that it

"ought to have been worth in the neighborhood of $1,000" at and before the time of the collision.

The president of plaintiff testified:

"The top was all broken; the springs were broken; the wheels were broken, all but one. The tires, and so forth, running gear, parts of it, was broken; the engine was, parts of it was, broken; it was practically worthless."

He also said he did not know what became of it.

The witness who placed the value of the automobile at $1,050 or $1,100 just before the accident was asked as to its value afterwards, and he answered:

"Wasn't worth enough for us to take up and send it back to the factory."

The witness who placed its value at $1,000 could not say just how long the car had been used, but that it was practically new at the time of the accident.

The amount plaintiff was entitled to recover under the evidence quoted is certainly not so precise and definite in the proof as to forbid any difference in opinion, nor as to forbid a verdict below the lowest amount named by any witness as the value of the automobile before the accident. The evidence tends to show that the automobile was absolutely worthless after the accident; but the evidence in that regard is not so conclusive as to make it unreasonable for the jury to make an allowance, in the exercise of their judgment, for some value of the automobile after the accident.

The evidence, although somewhat unsatisfactory, as to the precise value of the automobile, both immediately before and immediately after the accident, is sufficient to sustain a verdict for $550; and, under all the evidence as to value, it cannot be said that such compromise was effected as would require a reversal of the case, nor such as defendant may be heard to complain of as prejudicial.

In 2 Thompson on Trials, sec. 2606, it is said:

"Where the verdict which the jury returned cannot be justified upon any hypothesis presented by the evidence, it ought obviously to be set aside. Thus, if a suit were brought upon a promissory note, which purported to be given for $100.00, and

the only defense was that defendant did not execute the note, and the jury should return a verdict for $50.00 only, it would not be allowed to stand; for it would neither conform to the plaintiff's evidence, nor that of the defendant. * * * This principle, however, applies only to cases where the damages sought to be recovered are liquidated. In suits for unliquidated damages where the jury give a round sum, the amount of their verdict is, in many cases, necessarily the result of concession and compromise. In such cases a verdict will not be set aside, although the amount of the verdict itself raises a strong inference that it was arrived at as the result of striking an average—as where, in such a case, the verdict was five hundred and sixty dollars and fifty cents."

Also see the following cases, which, in more or less different degrees, appear to support the conclusion reached in the instant case: *Woolsey v. Zeiglar,* 32 Okla. 715, 123 Pac. 164; *St. Louis & S. E. Ry. Co. v. Myrtle,* 51 Ind. 566; *Metcalf v. Bockoven,* 62 Neb. 877, 87 N. W. 1055; *Benedict v. Michigan Beef & Provision Co.,* 115 Mich. 527, 73 N. W. 802; *Scholfield Gear & Pulley Co. v. Scholfield,* 71 Conn. 1, 40 Atl. 1046; *Huff v. Thurman,* 78 Mo. App. 635; *Hamilton v. Oswego Waterworks,* 163 N. Y. 562, 57 N. E. 1111, affirming judgment (1897) 22 App. Div. 573, 48 N. Y. Supp. 106; *Hogan v. Rosenthal,* 127 App. Div. 312, 111 N. Y. Supp. 676; *Campbell v. Brown,* 85 Kan. 527, 117 Pac. 1010.

It does not appear that the trial court erred in overruling the motion for a new trial, and the judgment should be affirmed.

## On Rehearing.

As shown in the original opinion, if the defendant's pilot from the south door of its car could have seen the track beyond the end of the car to within as short a distance of such end as he estimates (to within 35 or 40 feet on the opposite side of the track), and if the automobile was in a perilous position—that is, on or going on the track, and not likely to clear the same in time to avoid a collision—when the car was as far away as indicated by the estimate of Nadelhoffer that it was 50 or 80 feet away when he discovered it by looking back after the right

front wheel of the automobile was in the cavity between the rails of the track and the left front wheel about on the first rail of same or by the estimate of Nadelhoffer's companion, Greenwood, who thought that the car was about 45 feet away when, upon hearing Nadelhoffer's exclamation of discovery, he looked back and saw it, although he said the collision came so soon after his discovery that both seemed to occur at the same time, and if the pilot was looking at the crossing during the precise short time while the car covered any portion of the distance of from about ten to about 45 feet, which said obviously uncertain estimates, if accepted as correct, would have required it to cover after the automobile was in its perilous position and before its view was obstructed by the end of the car, the pilot must have seen it at some time while from about 50 to about 80 feet away; but, if it be conceded that the jury might reasonably have inferred from such evidence that the pilot had an opportunity to have discovered the automobile in peril, can it be further inferred that he did so in time to have given a signal to the engineer which should have resulted in avoiding the collision or the resultant damages?

The inference or presumption (based upon the stated testimonial evidence) that the pilot had an opportunity to discover the automobile in peril, although improbable as against his denial, notwithstanding his testimony that he was looking out, is, no doubt, permissible to the jury; but does the stated evidence justify the further inference or presumption that he actually discovered such peril and, too, in time to have avoided the collision or the consequent damage?

In 1 Wigmore on Evidence, sec. 33, it is said:

"Thus, throughout the whole realm of evidence, circumstantial and testimonial, the theory of the inductive argument as practically applied from the standpoint of admissibility is that the evidentiary fact will be considered when, and only when, the desired conclusion based upon it is more probable or natural, or at least a probable or natural hypothesis, and when the other hypotheses or explanations of the fact are either less probable or natural, or at least not exceedingly more probable or natural."

And in 2 Modern Law of Evidence (Chamberlayne) sec. 1029, it is said:

"The requirement that the logical inference styled a presumption of fact should be a strong, natural, and immediate one brings as a corollary the rule that no inference can legitimately be based upon a fact the existence of which rests upon a prior inference. In other words, there can be, in the great majority of cases, no presumption upon a presumption. On the contrary, the fact used as the basis of the inference, the *terminus a quo*, so to speak, must be established in a clear manner, devoid of all uncertainty."

Also see cases cited in notes to the text quoted.

Ordinarily, at least, the rule is as stated in said texts.

We think the inference that the pilot discovered the perilous situation of the automobile, and that, too, in time to have avoided the collision or damages, is not based immediately upon testimonial facts of sufficient certainty, and is too attenuated, remote, improbable, and wanting in reason therefor to be allowed.

The case of *St. Louis & S. F. R. Co. v. Clark, post,* 142 Pac. 396, appears to be distinguishable from the present case in that there was no evidence nor possible inference that Clark's wagon was in peril before the trainmen actually and admittedly discovered it and did all within their power to avoid the collision, nor that it was possible to have avoided the collision at any time after Clark actually reached a perilous situation; but that case would seem to be a practical recognition and application of the rule that the basic facts must be certain to support an inference, and such inference must be within the foregoing rule stated by Mr. Wigmore and Mr. Chamberlayne; it emphasizes the fact that the discovery of peril must have been actual to warrant an instruction upon liability in such event.

For the reasons stated, this case should be reversed and remanded for another trial.

By the Court:   It is so ordered.