OSCN Found Document:WATSON v. BNSF RAILWAY COMPANY

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 WATSON v. BNSF RAILWAY COMPANY
2024 OK 74
Case Number: 119256
Decided: 10/15/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 74, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

TERRI WATSON, Individually, and on behalf of all Wrongful Death Beneficiaries of Paul Watson, deceased, and as Next Friend of T.W., a minor, Plaintiffs/Appellants,
v.
BNSF RAILWAY COMPANY, A Foreign Corporation, Defendant/Appellee.
ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV
¶0 This is a wrongful death and personal injury action arising from the fatal collision between a pickup truck driven by Paul Watson and a train owned and operated by BNSF Railway Company. A jury found BNSF was not liable for the collision and the trial court denied Plaintiffs' motion for a new trial. On appeal, the Court of Civil Appeals, Division IV, found prejudicial error in the instructions given to the jury and remanded the case for a new trial. This Court previously granted certiorari. We find the error, if any, in the instructions was not so prejudicial as to mislead the jury to reach a result it otherwise would not have.

CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE TRIAL COURT'S
JUDGMENT IS AFFIRMED AND THE JURY VERDICT SHALL BE REINSTATED. THE MATTER IS REMANDED FOR FURTHER PROCEEDINGS.
Michael M. Blue, BLUE LAW, Oklahoma City, Oklahoma; Grant L. Davis, Thomas C. Jones, Timothy C. Gaarder, John S. Carroll, DAVIS, BETHUNE & JONES, LLC, Kansas City, Missouri; and Paul DeMuro, FREDERIC DORWART LAWYERS, Tulsa, Oklahoma, for Plaintiffs/Appellants.
George R. Mullican, Robert D. Hart, Christopher Wolek, and Michael Womack, MULLICAN & HART, P.C.; Clyde Muchmore and Melanie Wilson Rughani, CROWE & DUNLEVY, PC, Oklahoma City, Oklahoma, for Defendant/Appellee.
WINCHESTER, J.
¶1 On August 30, 2014, a train owned and operated by BNSF Railway Company ("BNSF") collided with a pickup truck driven by Paul Watson ("Watson"). Watson, who was not wearing a seatbelt at the time, was partially thrown from the vehicle, and died instantly when the vehicle flipped and landed upside down. Watson's wife, Terri, and their minor child (Appellants), both of whom were in the vehicle and belted, sustained injuries but survived. The suit consists of three claims: wrongful death in Wife's capacity as representative of Watson's estate; personal injury in her individual capacity; and personal injury in her capacity as the guardian of their minor child. Appellants alleged, among other things, that BNSF negligently maintained the railroad crossing allowing an obstruction of the sightline, and negligently failed to have sufficient safety features such as automatic warning lights and gates at the crossing.
¶2 After a three-week trial with several witnesses, experts, and hundreds of exhibits, the jury returned a verdict in favor of BNSF on all three claims. Appellants moved for a new trial which the trial court denied. Appellants appealed.
¶3 On appeal, the Court of Civil Appeals, Division IV ("COCA"), in a 2-1 decision, reversed the trial court and remanded for a new trial citing prejudicial errors in the jury instructions. Specifically, COCA found that the jury instructions were overbalanced in BNSF's favor and erroneously required a greater degree of care to be exercised by Watson than was necessary. BNSF petitioned for certiorari which this Court previously granted.

BACKGROUND
¶4 The fatal collision occurred at County Road 5200 Crossing, in Pawnee County, Oklahoma, near Hallet. The signs at the crossing on this gravel, county road were undisputedly passive; that is, there were reflective, crossbuck signs to warn of the crossing, but there were no warning lights or physical barriers to prevent access if a train was approaching.
¶5 Watson lived near the tracks and traveled over the crossing almost daily for six years. On the afternoon of the accident, Watson was driving his Ford F-150 pickup truck with his wife in the passenger seat and the couple's child in the back seat. Evidence presented at trial revealed that Watson failed to stop at a stop sign just before approaching the train tracks. At the same time Watson was advancing to the crossing at approximately twenty miles per hour, a BNSF freight train was approaching at a speed of approximately forty miles per hour. When Watson ultimately saw the train, he applied the brakes but was unable to come to a stop until the front bumper of his truck crossed the tracks. In an apparent attempt to reverse the vehicle, Watson shifted gears but ended up in neutral. The train collided with the truck which spun counterclockwise and flipped upside down next to the tracks. Watson's family was wearing seatbelts and survived the collision. Watson, who was unbelted, died at the scene. There was no dispute that the train was traveling in compliance with federal speed regulations or that the train sounded its horn, although Appellants disputed hearing the horn.
[1] 
¶6 Appellants sued BNSF alleging that BNSF negligently maintained the railroad crossing which allowed an obstructed sightline of the tracks. Appellants further claimed that BNSF negligently failed to install adequate warning devices at the crossing. BNSF moved for partial summary judgment claiming that the crossbuck warning device at the track had been installed, at least in part, using federal funds as part of a federal safety program and that federal law preempts a state tort claim challenging the adequacy of such device. The district court denied BNSF's motion, citing facts in dispute, and the case proceeded to trial.

¶7 The trial lasted three weeks with more than thirty witnesses and hundreds of exhibits presented. Because there were claims of negligence from both parties, the trial court gave numerous instructions regarding the duties of motorists and railroad companies at railroad crossings. The jury deliberated for less than thirty minutes and returned three "pink" verdict forms in favor of BNSF on all three of Plaintiffs claims. The pink forms indicated the jury either did not find BNSF negligent or that proof thereof was lacking. Appellants moved for a new trial which the trial court denied. Thereafter, Appellants appealed.
¶8 On appeal, COCA found that certain instructions presented to the jury constituted reversible error. COCA specifically noted that Instruction numbers 15, 22 and 27 each contained misstatements of law that caused the jury to reach a different conclusion than they would have otherwise.
[2] COCA, in a 2-1 decision, reversed the trial court, vacated the jury's verdict, and ordered a new trial. BNSF petitioned for certiorari.
STANDARD OF REVIEW 
¶9 Appellants appealed the jury verdict and trial court ruling alleging, among other arguments, reversible error in the jury instructions given. A trial court's denial of a new trial is reviewed for abuse of discretion. Capshaw v. Gulf Insurance Co., 2005 OK 5, ¶ 6, 107 P.3d 595, 599.
¶10 Jury instructions are "explanations of the law of a case enabling a jury to better understand its duty and to arrive at a correct conclusion. It is the trial court's duty to instruct on the fundamental issues of a case." Smicklas v. Spitz, 1992 OK 145, ¶11, 846 P.2d 362, 367. In giving the instructions, the court is not required to frame the issues, but it must state the law correctly. Appellate court review of jury instructions is governed by 20 O.S.2021 § 3001.1, which provides:

[n]o judgment shall be set aside or new trial granted by any appellate court of this state in any case ... on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

¶11 Considering § 3001.1, an appellate court reviews alleged errors in the instructions for whether a probability exists that jurors were misled and reached a different conclusion than they would have reached but for the questioned instructions. Cimarron Feeders, Inc. v. Tri-County Elec. Coop., Inc., 1991 OK 104, ¶ 5, 818 P.2d 901, 902. Proper review examines "the accuracy of the statement of law, the applicability of the instructions to the issues when the instructions are considered as a whole, and above all, whether the probability arose that jurors were misled and reached a different conclusion due to an error in the instruction." Id. ¶ 6, 818 P.2d at 902. Instructions need not be perfect so long as they accurately reflect Oklahoma law on the relevant issues. See Nye v. BNSF Ry. Co., 2018 OK 51, ¶56, 428 P.3d 863, 880; Bierman v. Aramark Refreshment Servs., Inc., 2008 OK 29, ¶ 22, 198 P.3d 877, 884-885.
¶12 When reviewing allegedly erroneous jury instructions, this Court must consider the instructions as a whole. We will not disturb a jury's verdict unless it appears the jury was probably misled by an erroneous instruction. It is not the appellate court's duty to weigh the evidence:

In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon. Where such competent evidence exists, and no prejudicial errors are shown in the trial court's instructions to the jury or rulings on legal questions presented during trial, the verdict will not be disturbed on appeal.

Florafax Int'l, Inc. v. GTE Mkt. Res., Inc., 1997 OK 7, ¶ 3, 933 P.2d 282, 287 (citations omitted).
ANALYSIS AND REVIEW
¶13 The issue before the Court on appeal is whether the trial court's instructions to the jury were so prejudicial as to require a new trial. As stated above, the trial court must give jury instructions that accurately reflect the law and are applicable to the issues. Covel v. Rodriguez, 2012 OK 5, ¶ 26, 272 P.3d 705, 715--716. We find the instructions herein were neither defective on their face nor so confusing or misleading that the jury was prevented from rendering a verdict consistent with the instructions and the evidence. There is nothing in the record to indicate the jury was confused by the instructions. 
¶14 COCA found that Instruction Nos. 15, 22 and 27 contained misstatements and that the jury was misled by the multiplicity of such inaccurate or misleading statements. The court found that the misstatements caused the jury to reach a different verdict than it would have but for the alleged errors and reversed the trial court's denial of a new trial.
¶15 We disagree with COCA's findings and with the standard of review as applied by the court. While COCA recited the correct test for reversible error in reviewing jury instructions it nonetheless erred in the test's implementation. As noted by the court, an appellate court must not disturb a jury verdict or judgment thereon unless a probability exists that the jury was misled to the extent of rendering a different verdict than it would have but for the alleged errors. Despite concluding "we cannot be certain that a new trial will result in a different verdict" as "both parties presented evidence in support of their case, and it is not the role of this Court to determine what evidence and testimony the trier of fact should find most credible," COCA nevertheless determined that reversible error existed. This reasoning is contra to our case law which has long held that there must be a "reasonable certainty" that the jury was misled and would have reached a different verdict. See Johnson v. Ford Motor Co., 2002 OK 24, ¶ 16, 45 P.3d 86, 92 ("A judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain the jury was misled thereby."). The mere possibility a different result might have been reached is insufficient to overturn a jury verdict and an appellate court must not re-weigh the evidence where a competent jury has decided the case.
¶16 The focal point of Appellants' arguments on appeal, and COCA's opinion, centered around Instruction No. 27 so we will begin there. Appellants allege the instruction misstated the law on the proper standard of care and caused the jury to reach a conclusion they otherwise would not have but for the instruction's error. In its entirety, Instruction No. 27 provides:

You are instructed that a railroad track is of itself a warning of danger and one who attempts to cross it must exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. As to what is ordinary care depends upon the surrounding circumstances, but it must be such care as commensurate with a known danger. Thus, if one attempts to cross a railroad track where his view is obstructed, he would be required to exercise a greater degree of care than he would if he were crossing a railroad track where there were no obstructions.

COCA agreed with Appellants' concerns finding that the scenario presented in Instruction No. 27's third sentence implied a higher standard of care when it instructed the jury that a "greater degree of care" was necessary under the circumstances. Relying on the Court's holding in Phillips Petroleum Co. v. Price, 1956 OK 191, 298 P.2d 772, COCA concluded that requiring a higher standard of care to be exercised than ordinary care invaded the province of the jury and was prejudicial to Appellants.
¶17 COCA's conclusion disregards the preceding sentences of Instruction No. 27 which specifically provide that the standard of care is one of ordinary care. Although COCA acknowledged that other jury instructions set out the correct duty of care, the court reasoned that Instruction No. 27 could have caused confusion for the jury by alluding to a greater degree of care.
[3] 
¶18 Citing Wilson v. St. Louis-S.F. Ry. Co., 1929 OK 503, 283 P. 999, BNSF asserts that Instruction No. 27 does not suggest that a greater degree of care is required of one party than the other. To the contrary, BNSF notes that the instruction requires both parties to exercise ordinary care and that what constitutes such care depends on the circumstances. The railroad asserts that COCA's ruling is in direct conflict with the holding in Wilson, a case integral to the foundation of Instruction No. 27 yet mentioned only in passing in the COCA opinion. BNSF emphasizes that Wilson has never been overturned and is still good law that has been utilized routinely in jury instructions involving railroad crossing incidents.

¶19 The Wilson Court addressed the precise issue herein and found the instruction given, nearly identical to Instruction No. 27, did not require reversal.
[4] Wilson v. St. Louis-S.F. Ry. Co., 1929 OK 503, ¶ 4, 283 P. 999, 1000. Although acknowledging possible issues with the instruction, the Court was not concerned with the language "greater degree of care," as alleged by Appellants, but instead with the illustration in the third sentence and its use of certain controverted facts as the basis for a hypothetical example. Id. ¶ 3, 283 P. at 1000. The Court found that the inclusion of the existence or nonexistence of "embankments, trees, weeds or shrubbery" injected disputed evidence that could "mislead and confuse the jury as to what has been proven to the prejudice of one of the parties." Id. Nevertheless, the Wilson Court found that while the trial court should refrain from the inclusion of disputed facts in jury instructions, considering the record as a whole, the party was not prejudiced therein. Id. The Court specifically rejected the argument that the instruction charged the motorist with the duty of using more than ordinary care:

It is asserted that the instruction, in effect, charged the deceased with the duty of using more than ordinary care, under such circumstances, and that a slight deviation from such care would be contributory negligence. The instruction does not yield to such an interpretation. It plainly defines the duty of deceased, by stating that he was required to exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. The instruction further told the jury that what would constitute ordinary care depended upon surrounding circumstances, but that the care required must be commensurate with a known danger. The court then gave an illustration of how ordinary care under one set of circumstances would differ from ordinary care under other circumstances. We are of the opinion that the giving of the instruction did not constitute reversible error.

Id. ¶ 4, 283 P. at 1000. In this case, Instruction No. 27 avoided this critique by excluding the reference to specific items of obstruction and, instead, simply illustrates a motorist's exercise of ordinary care might differ when faced with an obstructed crossing. We acknowledge that the illustration in the third sentence is unnecessary; however, we find that its inclusion in the instruction herein is insufficient to constitute reversible error.
[5] 
¶20 BNSF contends that COCA's ruling directly conflicts with Moore v. Burlington N. R.R. Co., 2002 OK CIV APP 23, 41 P.3d 1029 (certiorari denied), an opinion from another division of COCA as well as Nye v. BNSF Ry. Co., 2018 OK 51, 428 P.3d 863, a Supreme Court case that cited to Moore and the instruction in question. Although the facts and issues in Moore and Nye are distinguishable from this case, the instruction as given in Moore, and referenced in Nye, was identical to Instruction No. 27. The instruction in Moore was given based on the holding of Wilson. The Nye Court agreed that while the standard of ordinary care applies in railroad collision cases, such care might be exercised differently when a known danger is present than when it is not. Nye v. BNSF Ry. Co., 2018 OK 51, ¶ 32, fn 9, 428 P.3d 863, 875 ("Thus, with no further evidence that Nye should have known of the danger, Nye's standard of care was that of what an ordinarily prudent person would have exercised under the circumstances.") COCA's reasoning herein conflicts with these findings. Here, as in Nye, the facts necessary to determine a motorist's liability are in dispute. The jury heard all the testimony and viewed all the evidence. The resolution of these issues lies squarely within the purview of the jury and this Court will not disturb the trial court's judgment entered upon the jury's verdict that is supported by competent evidence as is the case here.

¶21 With respect to Instruction No. 15, Appellants cite Myers v. Mo. Pac. R.R. Co., 2002 OK 60, 52 P.3d 1014, for the proposition that the instruction unfairly characterized Watson's duty to yield at the train crossing as absolute. COCA agreed and found the instruction prejudicial. While the Myers Court did find that this instruction, standing alone, might be construed as "overbalanced" in favor of the railroad, the Court determined that when the instructions were considered as a whole, they "fairly and accurately reflect[ed] the Oklahoma law on the relative duties of railroads and motorists." Id. ¶ 32, 52 P.3d at 1030-1031. There is no reason to find differently in the present matter and we hold the instruction does not misstate the law.
¶22 Here, looking at the instructions in their entirety, the trial court also gave Instruction No. 23, which instructed that "a driver is not required to stop a vehicle approaching a railroad grade crossing within fifty (50) feet, but not less than fifteen (15) feet from the nearest rail, unless a railroad train approaching within approximately 1,500 feet of the highway/road crossing emits a signal audible from that distance or unless the approaching railroad train is plainly visible to traffic approaching the crossing in hazardous proximity." This "plainly visible" instruction is taken directly from 47 O.S.2021, § 11-701. Further, the trial court defined "plainly visible" in Instruction No. 24, as requested by Appellants, which explained that "[a] train is not 'plainly visible' unless a reasonably prudent person, situated as was the motorist and exercising ordinary care for their own safety, should have seen it." Taken as a whole, these instructions do not reflect the absolute precedence of the train as urged by Appellants and there is no reason to believe the jury was confused by these instructions.
¶23 Appellants also urge error with the portion of Instruction No. 22 which states the law requires a driver approaching a railroad crossing "to avoid getting himself into a place of danger." COCA found that a driver who is involved in a collision with a train has automatically failed "to avoid getting himself into a place of danger," and that the instruction "serves only to misleadingly inform the jury that, regardless of the nuances of the particular case, the injured plaintiff has failed to comply with what 'the law requires[.]'" COCA's reasoning did not consider the entirety of Instruction No. 22 nor did it acknowledge that its language came directly from the Supreme Court case of Mo.-Kan.-Tex. RR. Co. v. Harper, 1970 OK 77, ¶ 13, 468 P.2d 1014; see also Nye, supra, ¶ 31, 428 P.3d at 874-875 (recognizing this rule as "long-standing jurisprudence" in Oklahoma).
¶24 In Harper, the Court rejected the railroad's requested instruction relating to when a driver must stop at a railroad crossing by finding that the requested instruction might have confused the jury in situations where the train had sounded no warning of its own approach, as was the situation in that case. Instead, the trial court instructed the jury with an instruction finding that "the law requires those approaching a railroad crossing to exercise the care an ordinarily prudent person would use for his own safety in the same situation and circumstance and to avoid getting himself into a place of danger..." Id. ¶ 13, 468 P.2d at 1018-1019. The Court specifically held that while the instruction given in Harper "might have gone into more detail in describing the standard of care that those approaching a crossing in an automobile must use to avoid colliding with a train at the crossing, we think that, in a general way, it set forth the standard properly applicable to the present case. Under the circumstances, we find no cause for reversal in the trial court's refusal to give the jury defendants' requested Instructions." Id. Here, Instruction No. 22 is taken verbatim from the language found quoted by the Court in Harper.
¶25 Considering the precedence of this instruction in conjunction with the instructions given in Instruction Numbers 15, 23 and 24, supra, we find that the trial court's instructions as a whole provided the additional detail as to the standard of care required for drivers at crossroads that the Harper Court found potentially lacking therein. Accordingly, Instruction No. 22 was not given in error.
¶26 The contested instructions herein all concern Watson's duties and actions, not BNSF's. The jury could have returned comparative negligence verdict forms reflecting the negligence of both parties. Instead, the jury returned three pink verdict forms without apportioning fault between Appellants and Watson. The pink verdict forms indicate that BNSF was either not negligent in causing the accident or that there was a lack of proof that BNSF was negligent. Appellants are unable to show that the instructions given misled the jury such that it would have rendered a different verdict and, therefore, any error must be considered harmless.
[6] We find the record supports the jury's verdict. 
CONCLUSION
¶27 We have carefully examined the jury instructions given and find them free from fundamental error. The instructions properly made clear that the parties have reciprocal duties to act reasonably and to exercise ordinary care while at a railroad crossing and are all derived from existing case law. Considering the jury instructions as a whole, with the issues raised and evidence presented at trial, we conclude that these instructions adequately and fairly apprised the jury of the law of the case. We do not find that the jury was misled or confused by the instructions as given. Accordingly, the jury verdict is reinstated, and the matter remanded for further proceedings in accordance with this opinion.

CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE TRIAL COURT'S JUDGMENT IS AFFIRMED AND THE JURY VERDICT SHALL BE REINSTATED. THE MATTER IS REMANDED FOR FURTHER PROCEEDINGS.
CONCUR: KANE, C.J., ROWE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, and KUEHN, JJ.
DISSENT: DARBY, J. (By separate writing)

FOOTNOTES
[1] Appellants argued the train horn could not be heard inside the truck with the air conditioning turned up and the windows up. BNSF presented expert testimony to rebut this claim.
[2] Instruction No. 15 provides:
Right of Way at Railroad Crossings
You are instructed that where a railroad train and a motor vehicle are approaching an intersection of a street and a railroad track, the railroad train has the right-of-way over the approaching vehicle.
Instruction No. 22 provides:
The law requires those approaching a railroad crossing to exercise the care an ordinarily prudent person would use for his own safety in the same situation and circumstances and to avoid getting himself into a place of danger.
And finally, Instruction No. 27 provides:
You are instructed that a railroad track is of itself a warning of danger and one who attempts to cross it must exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. As to what is ordinary care depends upon the surrounding circumstances, but it must be such care as commensurate with a known danger. Thus, if one attempts to cross a railroad track where his view is obstructed, he would be required to exercise a greater degree of care than he would if he were crossing a railroad track where there were no obstructions.
[3] Appellants acknowledge Instruction Nos. 8, 12, 22 and 24 correctly advise the jury that Watson had a duty to use ordinary care, and that it was for the jury to determine what ordinary care was under the circumstances. The jury was instructed that negligence "is the failure to exercise ordinary care to avoid injury to another's person or property," but "the law does not say how a reasonably careful person would act under those circumstance. That is for you to decide." See Instruction No. 8. The jury was further instructed that it "is the duty of the driver of a motor vehicle to use ordinary care to prevent injury to themselves or other persons." See Instruction No. 12. Instruction No. 22 provides for motorists "to exercise the care an ordinarily prudent person would use for his own safety in the same situation and circumstances and to avoid getting himself into a place of danger." Finally, Instruction No. 24 states that a "train is not 'plainly visible' unless a reasonably prudent person, situated as was the motorist and exercising ordinary care for their own safety, should have seen it."
[4] The instruction in Wilson provides:
You are further instructed that a railroad track is of itself a warning of danger and one who attempts to cross it must exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. As to what is ordinary care depends upon surrounding circumstances, but it must be such care as is commensurate with a known danger. Thus, if one attempts to cross a railroad track where his view is obstructed by embankments, trees, weeds or shrubbery of any character, he would be required to exercise a greater degree of care than he would if he were crossing a railroad track where there were no obstructions.

Wilson v. St. Louis-S.F. Ry. Co., 1929 OK 503, 3, 283 P. 999, 1000. (Emphasis added to highlight the language omitted from Instruction No. 27 herein.)
[5] Nor do we find that Watson's failure to use a seatbelt was outcome determinative.
[6] Appellants also asserted that BNSF did not present credible proof of federal funding and should not have been allowed to argue at trial that it did not have a legal duty to install additional warning devices at the crossing. Appellants further alleged that counsel for BNSF made misstatements at trial regarding the duty to remove vegetation and that they were denied a fair trial because of such misstatements. Both parties provided experts and witnesses of their own to corroborate or dispute arguments made at trial. A review of the record disclosed evidence from which the jury could have reasonably concluded that BNSF was not at fault in this case or that proof thereof was lacking. Accordingly, we find no prejudicial error requiring reversal on these grounds.

Darby, J., dissenting.
¶1 I respectfully dissent to the majority's analysis regarding the standard of review for jury instructions, and to its determination that Instruction No. 27 did not constitute reversible error. The Court of Civil Appeals correctly found that Instruction No. 27, on its own and in combination with the other instructions, fails to state the law correctly and resulted in a probability that the jury decided differently than it otherwise would have. I would affirm the decision of the Court of Civil Appeals, reverse the trial court's judgment denying Plaintiff's Motion for New Trial, and remand this case to the district court for a new trial.

A. Standard of Review
¶2 First, with regard to the standard of review to be applied in this case, the majority begins by articulating the proper test for reviewing jury instructions -- "whether a probability exists that jurors were misled and reached a different conclusion than they would have reached but for the questioned instructions." Majority Op. ¶ 11 (quoting Cimarron Feeders, Inc. v. Tri-County Elec. Coop., Inc., 1991 OK 104, ¶ 5, 818 P.2d 901, 902). This "probability" test is mandated by title 20, section 3001.1, which states:
No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.
20 O.S. 2021, § 3001.1 (emphasis added). Since 1980, when the Legislature enacted section 3001.1 (Laws 1980, H.B. No. 1404, Ch. 9, § 1), the "probability" test has been the statutorily mandated standard.
¶3 Later in its analysis, however, the majority moves away from the "probability" test, and instead references a different standard -- "there must be a 'reasonable certainty' that the jury was misled and would have reached a different verdict." Majority Op. ¶ 15 (quoting Johnson v. Ford Motor Co., 2002 OK 24, ¶ 16, 45 P.3d 86, 92 ("A judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain the jury was misled thereby.")). I do not agree with the Majority's application of the "reasonable certainty" test, as it conflicts with the "probability" test articulated in section 3001.1.
¶4 This Court has generated two groups of cases with differing language related to the standard of review on this issue. One group of decisions incorporates the "reasonably certain" test. The Johnson case cited by the majority is representative of this approach. In Johnson, the defendant in a products liability suit claimed that reversible error occurred when the trial court refused to give additional requested jury instructions. This Court stated:
[T]he judgment will not be reversed for refusal to give additional or more detailed instructions requested by the losing party, if it does not appear probable that the refusal has resulted in a miscarriage of justice or substantial violation of constitutional or statutory rights. A judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury was misled thereby. The test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred.

Johnson, 2002 OK 24, ¶ 16, 45 P.3d at 92--93 (emphasis added) (footnotes omitted). This "reasonably certain" language appears in various cases extending back several decades.[1] 

¶5 The other group of decisions omits the "reasonably certain" language and instead states the "probability" test. See Cimarron Feeders, supra, 1991 OK 104, ¶ 5, 818 P.2d at 902 (citing Mosley v. Truckstops Corp. of Am., 1993 OK 79, ¶ 20, 891 P.2d 577, 584--85, as modified on reh'g (May 9, 1994) ("The standard of review is whether there is a probability that the jury was mislead [sic] and thereby reached a different result than it would have reached but for the error.")). See also Snyder v. Dominguez, 2008 OK 53, ¶ 8, 202 P.3d 135, 138; Lierly v. Tidewater Petroleum Corp., 2006 OK 47, ¶ 15, 139 P.3d 897, 902, as corrected (June 27, 2006); and Smicklas v. Spitz, 1992 OK 145, ¶ 14, 846 P.2d 362, 368.

¶6 These two standards -- "reasonably certain" versus "probability" -- are not the same. "Certain" has several recognized meanings, including "inevitable," "incapable of failing," and "destined."
[2] In contrast, the definitions of "probable" include "supported by evidence strong enough to establish presumption but not proof" and "likely to be or become true or real."[3] And, "probably" is defined as "insofar as seems reasonably true, factual, or to be expected," and "without much doubt."[4] For our analysis here, the law does not require certainty. The reviewing court need not find that the impact upon the jury from an erroneous instruction was certain, inevitable, or absolute. The statute does not go this far. Rather, the court must simply determine that the error "probably resulted" in a miscarriage of justice -- i.e. that the jurors were likely misled and reached a different conclusion due to an error in the instruction. See Cimarron Feeders, supra, 1991 OK 104, ¶ 5, 818 P.2d at 902; and 20 O.S. 2021, § 3001.1.
¶7 The Court of Civil Appeals applied the correct standard of review. The court quoted Myers v. Missouri Pacific Railroad Company, 2002 OK 60, ¶ 29, 52 P.3d 1014, 1029 ("whether there is a probability that the jury was misled, into reaching a result different from that which would have been reached but for the error"), and Woodall v. Chandler Material Company, 1986 OK 4, ¶ 13, 716 P.2d 652, 654 ("The test upon review on an instruction improperly given or refused is whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error."). This "probability" test is the proper, statutorily mandated, standard. I disagree with using the "reasonably certain" standard here, as it places a higher burden upon the party claiming instructional error than the statute requires.
B. The Third Sentence of Instruction No. 27 Constitutes Prejudicial Error
¶8 I also disagree with the majority's approval of Instruction No. 27.
[5] The language in the third sentence of this instruction that a driver is "required to exercise a greater degree of care" when "his view is obstructed" is an erroneous statement of the law. This instruction has been causing confusion in Oklahoma railroad crossing accident cases for almost 100 years. We should take this opportunity to end this problem.
¶9 We have long recognized the potential for confusion when a jury instruction refers to "greater degree of care" when ordinary care is, in fact, the standard. In St. Louis & San Francisco Railroad Company v. Model Laundry, 1913 OK 444, 41 P. 970, the trial court refused to give the following requested instruction, which contained a "greater degree of care" requirement similar to that in the present case:
You are instructed that a railroad is of itself a warning of danger, and one who attempts to cross it must exercise ordinary care in doing so----that is, he must exercise that degree of care which an ordinarily prudent man would exercise under like circumstances----but it must be such care as is commensurate with the known danger; thus, if one attempts to cross a track with an automobile which at the time is making more or less noises, caused by the machinery being in motion, he would be required to exercise a greater degree of care than he would if he were crossing on foot, or in a conveyance that was making little, if any, noise.

Id. 1913 OK 444, ¶ 8, 141 P. 970, 975 (emphasis added).
¶10 This Court disapproved of the "greater degree of care" verbiage. We explained that "care is said to be divided into three degrees: (1) 'Slight care;' (2) 'ordinary care;' (3) 'great care.'" Id. ¶ 10, 141 P. at 976 (quoting Gulf, C. & S. F. Ry. Co. v. Smith et al., 87 Tex. 348, 28 S. W. 520). We further stated:
It may be, for reasons urged by defendant, that the driver of an automobile should be held bound to take more and different precautionary measures against collision than either a footman or a driver of some other conveyances; but, if so, it would seem that such additional and different precautionary measures are required to constitute the same degree of care that the footman or driver of such other conveyance may exercise by fewer or different precautionary measures.
A "higher degree of care" would appear to require "great care" and a higher degree than a prudent person, under the circumstances, would usually exercise.

Model Laundry, 1913 OK 444, ¶ 10, 141 P. at 976 (emphasis added). We affirmed the trial court, and cautioned against the use of terms such as "great care" as it appeared in the questioned instruction:
It seems better and less productive of confusion to regard 'slight,' 'ordinary,' or 'great' care as the degrees known to the law, and to refer to difference in extent or character of precautionary measures required under different states of facts to constitute a degree by some other and more specific or, at least, more appropriate designation than as a higher or lower degree of care. 

Model Laundry, 1913 OK 444, ¶ 10, 141 P. at 976 (emphasis added).
¶11 Similarly, this Court has explained that "it is not proper for a court to fix or declare as a matter of law the amount or quantum of care that should be exercised under the circumstances or conditions of any particular or special case." Phillips Petroleum Co. v. Price, 1956 OK 191, ¶ 12, 298 P.2d 772, 776. We found that the use of terms such as "great care" is misleading and invades the province of the jury:
The use of such terms as 'slight care,' 'great care,' 'highest degree of care,' or other like expressions in instructions as indicating the quantum of care the law exacts under special conditions and circumstances, is misleading; and when so used they constitute an invasion of the province of the jury, whose function it is to determine what amount of care is required to measure up to the duty imposed by law under the facts of the particular case. The law imposes but one duty in such cases, and that is the duty to use due care; and the law recognizes only one standard by which the quantum of care can be measured, and that is the care which a person of ordinary prudence would exercise under like circumstances.

Id. (quoting Union Traction Co. v. Berry, 188 Ind. 514, 121 N.E. 655, 658, 124 N.E. 737, 32 A.L.R. 1171). I agree with the Court of Civil Appeals that Phillips Petroleum and Model Laundry provide guidance which should be applied in the present case. The jury must determine the extent of the danger involved in any situation, and the amount of reasonable care which ordinary prudence would require. Instead, Instruction No. 27 diverted the jury from its consideration of ordinary care and instructed jurors to require a "greater degree of care." We should not dismiss this error as harmless -- the problematic language resulted in the probability that the jury decided differently than it otherwise would have.
¶12 In addition, we should correct Instruction No. 27 because it is one-sided and indicates that a different standard of care is required of the driver than the railroad company. In St. Louis-San Francisco Railway Company v. Green, 1955 OK 163, ¶ 0, 287 P.2d 700, 700, this Court stated that "[t]he obligations of railroad companies and of travelers crossing their tracks are mutual and reciprocal, and an instruction is erroneous which requires 'special care' on the part of the railroad company while only requiring 'ordinary care' of the traveler." The Court of Civil Appeals cites this statement from Green and makes an important point relevant to our current analysis -- "[t]he inverse is also true: an instruction is erroneous which requires special care on the part of the traveler while only requiring ordinary care of the railroad company." COCA Op. ¶ 15.
¶13 In the present case, the reasonableness of Mr. Watson's conduct, and whether it constituted ordinary care, was a proper question for the jury. The third sentence of Instruction No. 27, however, fundamentally changed that question. It gave special emphasis to the situation where a driver's visibility is obscured, and told the jury that, as a matter of law, in that specific circumstance, the driver is held to a different standard of care. Had the trial court removed the "greater degree of care" language from Instruction No. 27, then we would not be faced with this issue on appeal. There would be no argument that this jury instruction, as far as "ordinary care" is concerned, consistently and accurately reflected Oklahoma law regarding the standard of care required, without injecting the likelihood that the jury was misled. Instead, this Court finds itself attempting to determine whether the jury understood that "greater degree of care" actually means the same thing as "ordinary care." I think not.
C. The Wilson, Moore and Nye Cases Must be Clarified
¶14 This Court bears the responsibility to change a court-made rule of law when it deems the change necessary in the interests of justice. Unah By & Through Unah v. Martin, 1984 OK 2, ¶ 12, 676 P.2d 1366, 1370. If we are convinced that the Court has erroneously interpreted some phrase of our basic law, it is our duty to correct such error. Dobbs v. Bd. of Cty. Comm'rs of Oklahoma Cty., 1953 OK 159, ¶ 46, 257 P.2d 802, 809. In addition to rejecting the third sentence of Instruction No. 27, I would clarify the related string of cases cited by the parties, and in the opinions of the majority and Court of Civil Appeals.
¶15 This Court first encountered an instruction nearly identical to Instruction No. 27 in Wilson v. St. Louis-San Francisco Railway Company, 1929 OK 503, 283 P. 999. The instruction in Wilson stated as follows:
You are further instructed that a railroad track is of itself a warning of danger and one who attempts to cross it must exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. As to what is ordinary care depends upon surrounding circumstances, but it must be such care as is commensurate with a known danger. Thus, if one attempts to cross a railroad track where his view is obstructed by embankments, trees, weeds or shrubbery of any character, he would be required to exercise a greater degree of care than he would if he were crossing a railroad track where there were no obstructions.

Id. 1929 OK 503, ¶ 2, 283 P. at 1000.
¶16 In Wilson, the plaintiffs complained that using controverted facts in the hypothetical example (where a driver's view is obstructed by embankments, trees, weeds, or shrubbery) placed a greater burden of care on the driver than that of ordinary care under the circumstances. First, the Court considered whether contested facts were improperly included, and acknowledged that disputed evidence in an instruction could "mislead and confuse the jury regarding what has been proven to the prejudice of one of the parties." Id.
[6] More relevant to today's analysis, however, is Wilson's statement that a jury is likely to be misled and confused "when the court makes special reference to particular evidence in the case in such a way as to give it special emphasis." Id. 1929 OK 503, ¶ 3, 283 P at 1000 (emphasis added). The Court cautioned that "[t]rial courts should refrain from giving such instructions." Id.
¶17 Wilson was correct in this concern. Without a doubt, the third sentence in Instruction No. 27 gives special emphasis to particular evidence in the case -- a crossing where the driver's view is obstructed -- and imposes a greater degree of care in that specific situation than what the law requires. The majority states that "Instruction No. 27 avoided this critique by excluding the reference to specific items of obstruction and, instead, simply illustrates a motorist's exercise of ordinary care might differ when faced with an obstructed crossing." Majority Op. ¶ 19. I disagree that the problem in Instruction No. 27 is so easily cured. The error here is not the reference to specific obstructions such as trees, shrubs, etc. Nor is the error the inclusion of disputed versus undisputed facts. To the contrary, whether or not the instruction lists the particular items obstructing the driver's view, it ultimately gives special emphasis to a circumstance where the driver's view was obstructed. It carves out a specific situation and instructs the jury to give those facts different treatment under the law.
¶18 In Wilson, this Court ultimately rejected the argument that the instruction improperly required the deceased driver to use more than ordinary care under the circumstances. Instead, the Court determined that the first two sentences in the instruction correctly state the law, and that the third sentence simply illustrates "how ordinary care under one set of circumstances would differ from ordinary care under other circumstances." Id. at ¶ 4. I disagree with this conclusion in Wilson -- it is not supported by a plain reading of the instruction. Nowhere does the instruction explain that the "greater degree of care" it requires is actually an illustration of "ordinary care" described in the preceding sentences. A juror would very likely read the third sentence to mean that a higher level of care, one which is greater than ordinary care, is called for when the driver's view is obstructed. This prejudicial error is exactly what this Court cautioned against in Phillips Petroleum and Model Laundry,
[7] and I would overrule the Wilson opinion to the extent that it authorizes the third sentence of Instruction No. 27.
¶19 The Wilson decision has spawned subsequent cases which illustrate the confusion inherent in Instruction No. 27. To ensure that the jury instructions related to railroad crossing accidents accurately state the law, we should take this opportunity to overrule those cases. The first is Moore v. Burlington Northern Railroad Company, 2002 OK CIV APP 23, 41 P.3d 1029 (certiorari denied). The contested instruction in Moore was identical to Instruction No. 27 in the present case. Based upon Wilson, the Moore court held that failure to give this instruction to the jury constituted prejudicial error. Moore, 2002 OK CIV APP 23, ¶ 11, 41 P.3d at 1033. Moore, however, did not involve any challenge to the language used in the third sentence of the instruction, and contains no independent analysis regarding the legal accuracy of the "greater degree of care" requirement. The court simply determined that a greater degree of care was required because the driver was familiar with the dangerous railroad crossing:
[The driver] Bailey should have been aware the distance between the tracks and the stop sign could present a hazard by his trailer remaining on the tracks. In the circumstances of this case, Bailey was required to exercise a greater degree of care because of the visibility limitations which obstructed his view of the train within 1000 feet and the nearness of the stop sign. That the trial court did not instruct the jury Bailey was required to exercise a greater degree of care because of the visibility limitations was prejudicial error.

Id.
¶20 Notably, the court embraces the "greater degree of care" mandated in the jury instruction without discussing the proper standard of care required by the law. Moore's analysis is brief, and fails to specify that "greater degree of care" actually means the degree of care which an ordinarily prudent person would exercise under like circumstances. By omitting this important legal nuance, Moore perpetuates the problem inherent in the third sentence of Instruction No. 27. We should overrule Moore to the extent that it authorizes the use of the "greater degree care" portion of Instruction No. 27.
¶21 The next case which we should address is Nye v. BNSF Railway Company, 2018 OK 51, 428 P.3d 863. In Nye, the relevant issue was whether the plaintiff's failure to yield the right of way to a plainly visible train constituted negligence per se, and the parties introduced conflicting evidence regarding the visibility of the train and the obstruction of the driver's view. In a footnote, the Nye Court acknowledged that Moore applied the "greater degree of care" instruction (identical to Instruction No. 27.) because the driver in Moore was familiar with the railroad crossing, and knew the view was obstructed there. Nye, 2018 OK 51, ¶ 31 n.9, 428 P.3d at 875 n.9. The Court contrasted Moore from the facts before it, noting a lack of conclusive evidence that Nye was familiar with the railroad track, or "knew [that] the line of visibility up and down the track was limited." Id. The Court concluded that "with no further evidence that Nye should have known of the danger, Nye's standard of care was that of what an ordinarily prudent person would have exercised under like circumstances." Id. (emphasis added).
¶22 This statement is Nye is important -- it suggests that if Nye had known of the danger, then the Court would have determined that a different level of care, one which is greater than ordinary care, is appropriate. This represents the crux of the problem in Instruction No. 27. The "ordinary care" standard is applicable whether or not the driver knew or should have known of the danger. What constitutes ordinary care will depend upon the situation, but the legal standard itself does not change. We should overrule Nye to the extent that it implies that a different standard of care should be applied at a railroad crossing with an obstructed view, or authorizes the use of the third sentence in Instruction No. 27.

D. Conclusion
¶23 I would hold that the third sentence in Instruction No. 27 is an erroneous statement of the law and injects a clear probability that the jury decided differently than it otherwise would have. I would overrule Wilson and its progeny and remove the third sentence from Instruction No. 27. I would also affirm the decision of the Court of Civil Appeals, reverse the trial court's judgment denying Plaintiff's Motion for New Trial, and remand this case for a new trial.

FOOTNOTES
[1] This Court has repeatedly made the pertinent statement that "[a] judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury was misled thereby." See, e.g., Lee v. Volkswagen of Am., Inc., 1984 OK 48, ¶ 34, 688 P.2d 1283, 1289-90, and Fields v. Volkswagen of Am., Inc., 1976 OK 106, ¶ 30, 555 P.2d 48, 57. Johnson cites both Lee and Fields in support of the "reasonably certain" verbiage. Johnson v. Ford Motor Co., 2002 OK 24, ¶ 16 n.16, 45 P.3d at 92 n.16. See also Messler v. Simmons Gun Specialties, Inc., 1984 OK 35, ¶ 25, 687 P.2d 121, 129; Missouri-Kansas-Texas R. Co. v. Harper, 1970 OK 77, ¶ 15, 468 P.2d 1014, 1020; and Commonwealth Life Ins. Co. v. Gay, 1961 OK 186, ¶ 25, 365 P.2d 149, 153. In this specific context, this Court appears to have used these terms -- "reasonably certain" and "probability" -- interchangeably. The phrase "reasonably certain," however, is problematic, as it conflicts with the clear language of title 20, section 3001.1 and could be interpreted to require an incorrect standard.
[2] Certain, Merriam-Webster, https://www.merriam-webster.com/dictionary/certain (last visited Oct. 7, 2024).
[3] Probable, Merriam-Webster, https://www.merriam-webster.com/dictionary/probable (last visited Oct. 7, 2024). This dictionary also defines "probability" as "something (such as an event or circumstance) that is probable." Probability, Merriam-Webster, https://www.merriam-webster.com/dictionary/probability (last visited Oct. 7, 2024).
[4] Probably, Merriam-Webster, https://www.merriam-webster.com/dictionary/probably (last visited Oct. 7, 2024).
[5] Instruction No. 27 provides:
You are instructed that a railroad track is of itself a warning of danger and one who attempts to cross it must exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. As to what is ordinary care depends upon surrounding circumstances, but it must be such care as is commensurate with a known danger. Thus, if one attempts to cross a railroad track where his view is obstructed, he would be required to exercise a greater degree of care than he would if he were crossing a railroad track where there were no obstructions.
[6] The Court ultimately rejected the plaintiff's argument that the instruction included controverted facts, because the plaintiff was actually the party who presented evidence that the driver's view in the underlying accident was, in fact, obstructed by an embankment with trees, weeds, and undergrowth. Wilson v. St. Louis-San Francisco Ry. Co., 1929 OK 503, ¶ 2, 283 P. 999, 1000. The plaintiff was not in a position to complain about including plaintiff's own evidence in the instruction and could not later argue that these were controverted facts. Id.
[7] See discussion supra at ¶¶ 9-11.
 
 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2002 OK CIV APP 23, 41 P.3d 1029, 
MOORE v. BURLINGTON NORTHERN RAILROAD CO.
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1913 OK 444, 141 P. 970, 42 Okla. 501, 
ST. LOUIS & S. F. R. CO. v. MODEL LAUNDRY
Discussed at Length

 
1991 OK 104, 818 P.2d 901, 62 OBJ 3111, 
Cimarron Feeders, Inc. v. Tri- County Elec. Coop., Inc.
Discussed at Length

 
1992 OK 145, 846 P.2d 362, 63 OBJ 3023, 
Smicklas v. Spitz
Discussed at Length

 
1993 OK 79, 891 P.2d 577, 64 OBJ 1859, 
Mosley v. Truckstops Corp. of America
Discussed

 
1997 OK 7, 933 P.2d 282, 68 OBJ 306, 
Florafax International, Inc. v. GTE Market Resources, Inc.
Discussed

 
1953 OK 159, 257 P.2d 802, 208 Okla 514, 
DOBBS v. BOARD OF COUNTY COM'RS OF OKLAHOMA COUNTY
Discussed

 
1955 OK 163, 287 P.2d 700, 
ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. GREEN
Discussed

 
1956 OK 191, 298 P.2d 772, 
PHILLIPS PETROLEUM COMPANY v. PRICE
Discussed at Length

 
1961 OK 186, 365 P.2d 149, 
COMMONWEALTH LIFE INSURANCE COMPANY v. GAY
Discussed

 
2002 OK 24, 45 P.3d 86, 
JOHNSON v. FORD MOTOR CO.
Discussed at Length

 
2002 OK 60, 52 P.3d 1014, 
MYERS v. MISSOURI PACIFIC RAILROAD CO.
Discussed at Length

 
1970 OK 77, 468 P.2d 1014, 
MISSOURI-KANSAS-TEXAS RAILROAD CO. v. HARPER
Discussed at Length

 
2005 OK 5, 107 P.3d 595, 
CAPSHAW v. GULF INSURANCE COMPANY
Discussed

 
2006 OK 47, 139 P.3d 897, 
LIERLY v. TIDEWATER PETROLEUM CORPORATION
Discussed

 
2008 OK 29, 198 P.3d 877, 
BIERMAN v. ARAMARK REFRESHMENT SERVICES, INC.
Discussed

 
2008 OK 53, 202 P.3d 135, 
SNYDER v. DOMINGUEZ
Discussed

 
1929 OK 503, 283 P. 999, 141 Okla. 108, 
WILSON v. ST. LOUIS-S. F. RY. CO.
Discussed at Length

 
2012 OK 5, 272 P.3d 705, 
COVEL v. RODRIGUEZ
Discussed

 
1976 OK 106, 555 P.2d 48, 
FIELDS v. VOLKSWAGEN OF AMERICA, INC.
Discussed

 
2018 OK 51, 428 P.3d 863, 
NYE v. BNSF RAILWAY CO.
Discussed at Length

 
1984 OK 2, 676 P.2d 1366, 
Unah By and Through Unah v. Martin
Discussed

 
1984 OK 35, 687 P.2d 121, 
Messler v. Simmons Gun Specialties, Inc.
Discussed

 
1984 OK 48, 688 P.2d 1283, 
Lee v. Volkswagen of America, Inc.
Discussed

 
1986 OK 4, 716 P.2d 652, 57 OBJ 669, 
Woodall v. Chandler Material Co.
Discussed

Title 20. Courts

 
Cite
Name
Level

 
20 O.S. 3001.1, 
Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Discussed at Length

Title 47. Motor Vehicles

 
Cite
Name
Level

 
47 O.S. 11-701, 
Obedience to Signal Indicating Approach of Train
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA